UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JOEL BEECHAM,

                    Petitioner,

        -against-                                MEMORANDUM & ORDER
                                                 12-CV-0822(JS)


THOMAS LaVALLEY, Superintendent of
Green Haven Correctional Facility,

                    Respondent.
----------------------------------------X
APPEARANCES
For Petitioner:      Joel Beecham, pro se
                     06-A-1535
                     Green Haven Correctional Facility
                     594 Route 216
                     P.O. Box 4000
                     Stormville, NY 12582

For Respondent:      Glenn D. Green, Esq.
                     Suffolk County District Attorney's Office
                     200 Center Court Drive
                     Riverhead, NY 11901


SEYBERT, District Judge:

        Joel Beecham ("Petitioner") petitions this Court pro

se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

For the following reasons, his Petition is DENIED.

I.  Factual Background

        In 2004, when Petitioner was released from prison, Kelly,[1] with whom Petitioner fathered two children, decided to pick up Petitioner at his release from Sing Sing prison in New York.  (Trial Tr., Docket Entry 6-9, 1340:4-9; 1341:19-23.)  The two agreed to live together in Georgia.  (Trial Tr. 1339:10-13.)  After Petitioner's release, the two drove to Long Island to pick up Tamara Brown and Brown's children from a shelter.  (Trial Tr. 1341:24-1342:6.)  While in Long Island, the group stayed in several places, including motels.  (Trial Tr. 1346:8-15.)

        Over a number of days, at several hotels, Petitioner punched Kelly in the face, stabbed her with scissors, dragged her by her hair, burnt her thigh, caused her to bleed, choked her, and threw Clorox in her face.  (See, e.g., Trial Tr. 1354:12-1362:6; 1364:19-21.)  Petitioner sodomized Kelly.  (Trial Tr. 1380:13-1382:20.)  Because of the injuries (which went untreated for days), Kelly's eyes were swollen shut and bruised, her jaw was locked, her nose was bleeding, and she was bleeding from several areas of her body.  (Trial Tr. 1360:2-1362:6; 1379:3-5.)  Police officers eventually arrived at the hotel.  (Trial Tr. 1404:13-15.)  Afraid of Petitioner, Kelly

---

[1] In accordance with New York law, the victim's last name was not used in order to protect her identity.  (See Resp't's Answer, Docket Entry 6, ¶ 4 n.1.)

told the police she was a prostitute; she told the truth after she arrived at the police station. (Trial Tr. 1405:2-7; 1409:5-23.) The next day, Kelly's mother, Edna Jackson, took Kelly to Norfolk, Virginia where Kelly was examined by Dr. Latanya Gray. (Trial Tr. 1412:5-18.) Dr. Gray testified as to Kelly's injuries, documenting Kelly's two black eyes and a tear of her perineum. (Trial Tr., Docket Enty 6-10, 1746:2-8.)

In June 2004, Kelly and Petitioner drove to Long Island to a shelter where the mother of Petitioner's children, Tamara Brown, was staying. The group stayed together at a motel. (Resp't's Answer ¶¶ 31, 32.) Later that month, Brown returned to the shelter to retrieve her belongings, at which time Gloria Holder, an employee at the shelter, noticed Brown had scratches on her neck and cigarette burns on her arms. (Trial Tr. 1172:8-22.)

Sometime in late June or early July of 2004, Brown called her mother from a Long Island hotel and said she and her children were being held by Petitioner. (Trial Tr. 860:5-8.) Brown told her mother not to call the police because Brown was afraid of Petitioner. (Trial Tr. 861:8-15.) In July 2004, Brown and her children entered a homeless shelter in North Babylon, New York. (Trial Tr. 1731-33.) On July 19, 2004, Brown and her children left the shelter; she did not take her belongings with her. (Trial Tr. 1736:7-1737:21.) On July 19,

Brown spoke to her father about moving to Brooklyn to live with him. (Trial Tr. 797:9-798:4.) When her father called the shelter for directions on July 20th (in order to pick up Brown), he was told that she moved out. (Trial Tr. 799:14-19.) He never heard from Brown again. (Trial Tr. 800:11-13.) On July 24, Petitioner spoke to Brown's mother and father on the phone, at which time he told them that Brown had left him. (Trial Tr. 800:17-802:6.)

On July 26, 2004, Benjamin McCall saw a body, which was later identified as Brown's, lying in the woods adjacent to Little East Neck Road. (Trial Tr., Docket Entry 6-8, 548:13-19.) McCall told two nearby police officers about the body. (Trial Tr. 548:20-24.) Peanut shells were found at the crime scene; a peanuts bag and peanut shells were also found in Brown's car. (Trial Tr. 631:13-20.) DNA tests on the peanut bag matched the bag with Petitioner. (Trial Tr. 1655:13-1356:15.)

Petitioner was wanted in New York for violating his parole. (Trial Tr. 912:5-8.) On August 1, 2004, Petitioner was found in Stockbridge, Georgia, where he was arrested and found with Brown's New York State benefits card. (Trial Tr. 916:3-25; 929:24-930:5.) Petitioner was taken to the Henry County Police Department for questioning. (Trial Tr. 966:6-9.) Petitioner was read his Miranda rights; he waived those rights and he

signed a pre-printed Miranda card. (Trial Tr. 972:2-5; 973:6-16; 975:20-976:14.) Petitioner told the officers that Brown never stayed with him at a hotel. (Trial Tr. 986:16-23.) The officers took a break and left the room. (Trial Tr. 987:15-18.) After the interview resumed, the officers asked Petitioner if he would sign a sworn written statement, which documented what he had just told them. (Trial 989:16-23.) Petitioner refused, he said, because one of the officers had already transcribed everything Petitioner said. (Trial Tr. 989:20-23.)

Petitioner was then brought back to New York. After reading Petitioner his Miranda rights, officers interviewed Petitioner again. Petitioner waived his Miranda rights and signed the Miranda card. (Trial Tr. 1503:5-1504:23.) At this point, he admitted that Brown had been in the hotel room. (Trial Tr. 1509:4-17.) Petitioner denied having been in possession of Brown's benefits card. (Trial Tr. 1515:22-1516:4.)

## II. Legal Background

On March 6, 2006, at the conclusion of a jury trial in New York County Court, Suffolk County, Petitioner was found guilty of Murder in the Second Degree, two counts of Criminal Sexual Acts in the First Degree, Rape in the First Degree, Assault in the Second Degree, and Menacing in the Second Degree. (See Trial Tr. 2033:21-2034:20.) Petitioner was sentenced to:

(1) three imprisonment terms of 25-years-to-life to be served consecutively, (2) seven years imprisonment (running consecutively), (3) one year imprisonment (running currently), and (4) a period of post-released supervision. (See Resp't's Answer ¶ 3.)

Petitioner appealed the conviction to the New York Appellate Division, Second Department. People v. Beecham ("Beecham I"), 74 A.D.3d 1216, 904 N.Y.S.2d 727 (2d Dep't 2010). Petitioner appeal was based upon the same grounds as the present Petition. On June 22, 2010, the Appellate Division affirmed the judgment and Petitioner's sentence. See id. The New York Court of Appeals denied Petitioner's application for leave to appeal. People v. Beecham ("Beecham II"), 15 N.Y.3d 918, 939 N.E.2d 811, 913 N.Y.S.2d 645 (2010).

III. The Petition

Petitioner asserts the following grounds: (1) Petitioner's constitutional right to remain silent was violated; (2) the trial court improperly denied Petitioner's severance motion; (3) Petitioner was denied effective assistance of counsel; (4) Petitioner was deprived of his due process rights when he was found guilty despite legally insufficient evidence; (5) Petitioner was denied a fair trial when the trial court limited voir dire questions; (6) Petitioner was denied a fair trial as to certain remarks made by the prosecutor during the

trial; (7) Petitioner was denied his right to be present at "all material stages of the trial"; and (8) Petitioner's prison sentence is unconstitutional. (See Pet. at 5-9, 15-16[2].)

## DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the Petition.

## I.  Legal Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011).

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(a).

A federal court may grant a writ of habeas corpus to a state prisoner when prior state adjudication of the prisoner's case "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  Id.

---

[2] The page numbers of the Petition are those generated by the Electronic Case Filing system.

at § 2254(d)(1). "This is 'difficult to meet,' and a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen v. Pinholster, --- U.S. ----, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) (citations omitted).

During a review of a petition for a writ of habeas corpus, federal courts presume that the state court's factual determinations are correct. See 28 U.S.C. § 2254(e)(1).

A. Exhaustion

A state prisoner seeking federal habeas review of his state conviction is required to first exhaust all remedies available to him in state court. See 28 U.S.C. § 2254(b)(1)(A). "Exhaustion requires a petitioner fairly to present the federal claim in state court." Jones v. Keane, 329 F.3d 290, 294 (2d Cir. 2003). Presentation means a petitioner "has informed the State court of both the factual and the legal premises of the claim he asserts in Federal court." Id. at 295 (internal quotation marks and citations omitted).

B. Procedural Default

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will

> result in a fundamental miscarriage of
> justice.

Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L.

Ed. 2d 640 (1991).

"If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we 'must deem the claim procedurally defaulted.'" Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (quoting Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001)).

## II. Ground One: Miranda Violation

Petitioner argues that he invoked his right to remain silent when he refused to sign a written statement that documented his oral statements. (See Pet. at 5.) The Appellate Division held that there was no merit to this claim. See Beecham I, 904 N.Y.S.2d at 728.

### A. Standard

"[T]he prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966).

> Prior to any questioning, the person must be
> warned that he has a right to remain silent,

that any statement he does make may be used
as evidence against him, and that he has a
right to the presence of an attorney[.] The
defendant may waive effectuation of these
rights, provided the waiver is made
voluntarily, knowingly and intelligently.
If, however, he indicates in any manner and
at any stage of the process that he wishes
to consult with an attorney before speaking
there can be no questioning. Likewise, if
the individual is alone and indicates in any
manner that he does not wish to be
interrogated, the police may not question
him.

Id. at 444-45.

A suspect must invoke his right to remain silent "unambiguously." See Berghuis v. Thompkins, 560 U.S. 370, 381, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010) (citing Davis v. United States, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355, 129 L. Ed. 2d 362 (1994)). "If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation, [ ] or ask questions to clarify whether the accused wants to invoke his or her Miranda rights." Id. (quoting Davis, 512 U.S. at 461–62).

B.   Analysis

Assuming, arguendo, Petitioner intended his refusal regarding the written statement to be a blanket invocation of his right to remain silent, Petitioner fails to establish that his invocation was unambiguous. Berghuis, 560 U.S. at 381.

Moreover, Petitioner twice signed a <u>Miranda</u> card: once in Georgia and once in New York. Petitioner voluntarily and knowingly waived his right to remain silent by signing these cards. His refusal to sign the written statement did not unambiguously negate these waivers. Indeed, he said he refused simply because the officers had already transcribed the statements--Petitioner never said he wished to remain silent. The Appellate Division's holding was not an unreasonable application of Federal law. <u>See</u> <u>Cullen</u>, 131 S. Ct. at 1398. Accordingly, Ground One of the Petition is DENIED.

III. <u>Ground Two: Motion for Severance</u>

Petitioner argues that the trial regarded charges "involving multiple victims [ ] occurring on different dates at different places." (Pet. at 6.) By not granting Petitioner's motion to sever, Petitioner argues, the trial court deprived him of his right to a fair trial. (See Pet. at 23-24.) The Appellate Division held that joinder was permitted under New York Criminal Procedure Law. <u>See</u> <u>Beecham I</u>, 904 N.Y.S.2d at 728 (citing N.Y. CRIM. PRO. § 200.20(2)(b)).

A. <u>Standard</u>

"Two offenses are 'joinable' when . . . [e]ven though [they are] based upon different criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that [ ] proof of [one of the] offense[s] would be

material and admissible as evidence in chief upon a trial of the [other]." N.Y. CRIM. PRO. § 200.20(2)(b).

"Joinder and severance are questions left to the discretion of the trial judge; no constitutional question is involved." Madden v. Fogg, 501 F. Supp. 243, 246 (S.D.N.Y. 1980) (citing N.Y. CRIM. PRO. § 200.20(2)(b)). "The denial of a severance motion is reviewed for abuse of discretion, and will not be overturned unless the defendant demonstrates that the failure to sever caused him substantial prejudice in the form of a miscarriage of justice." United States v. Jones, 16 F.3d 487, 492 (2d Cir. 1994) (quoting United States v. Blakney, 941 F.2d 114, 116 (2d Cir. 1991)) (internal quotation marks omitted). "Substantial prejudice does not simply mean a better chance of acquittal." United States v. Alvarado, 882 F.2d 645, 655 (2d Cir. 1989) (citation omitted). A habeas petitioner "must, to succeed, go beyond the potential for prejudice and prove that actual prejudice resulted from the events as they unfolded during the [ ] trial." Herring v. Meachum, 11 F.3d 374, 377-78 (2d Cir. 1993) (emphasis in original) (citing Tribbitt v. Wainwright, 540 F.2d 840, 841 (5th Cir. 1976)).

Habeas review of a state court's denial of a motion to sever is even more limited than direct appellate review. See, e.g., Alejandro v. Scully, 529 F. Supp. 650, 651 (S.D.N.Y. 1982).

B. <u>Analysis</u>

Joinder was authorized under New York law for circumstances such as Petitioner's trial. The circumstances of each criminal transaction were clearly "of such nature that [ ] proof of [one of the] offense[s] would be material and admissible as evidence in chief upon a trial of the [other]." N.Y. CRIM. PRO. § 200.20(2)(b). For example, when police officers rescued Kelly from Petitioner's hotel room at the Broadway Motor Inn, Brown remained inside with her children. (Trial Tr. 1404:14-21.) After this incident, Brown called her mother and returned to the shelter with visible injuries. This incident would have been material and admissible in each trial. Generally, as Respondent argues, Petitioner's contact with the victims "overlapped so that it was essential to the jury's understanding of what happened." (Resp't's Br., Docket Entry 6-3, 8.[3]) Petitioner fails to establish how joinder in his trial resulted in actual or substantial prejudice. <u>See</u> <u>Herring</u>, 11 F.3d at 377-78; <u>see</u> <u>also</u> <u>Jones</u>, 16 F.3d at 492. The Appellate Division's holding was not an unreasonable application of Federal law. Accordingly, Ground Two of the Petition is DENIED.

---

[3] Respondent argues, moreover, that "[n]ot only did he have contemporaneous contact with both Kelly and Tamara, he had them together in the same place and at the same time on multiple occasions. This was independently corroborated[.]" (Resp't's Br. 8.)

IV.  Ground Three: Ineffective Assistance of Counsel

Petitioner argues he received ineffective assistance of counsel when his attorney "failed to move to dismiss the indictment because [Petitioner] was not given an opportunity to testify before the grand jury." (Pet. at 18.)  The Appellate Division denied this claim in Petitioner's direct appeal. Beecham I, 904 N.Y.S.2d at 729.

A.  Standard

"It has long been recognized that the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449, 25 L. Ed. 2d 763 (1970) (citing Reece v. Georgia, 350 U.S. 85, 90, 76 S. Ct. 167, 170, 100 L. Ed. 77 (1955); Glasser v. United States, 315 U.S. 60, 69-70, 62 S. Ct. 457, 464-65, 86 L. Ed. 680 (1942); Avery v. Alabama, 308 U.S. 444, 446, 60 S. Ct. 321, 322, 84 L. Ed. 377 (1940); Powell v. Alabama, 287 U.S. 45, 57, 53 S. Ct. 55, 59-60, 77 L. Ed. 158 (1932)).

In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court established a two-part test to determine whether counsel's assistance was ineffective.  First, "[Petitioner] must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688.  To meet the first prong of the Strickland test, Petitioner must overcome the strong presumption

14

that the challenged action was sound trial strategy under the circumstances at the time. See id. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [Petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound [ ] strategy." (internal quotation marks and citation omitted)). Second, Petitioner must show that counsel's performance prejudiced his defense; "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694 (noting "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.")

There is no constitutional right to testify before a grand jury. See Hurtado v. California, 110 U.S. 516, 534-35, 4 S. Ct. 111, 120, 28 L. Ed. 232 (1884) (the Fourteenth Amendment "was not meant or intended to include . . . the institution and procedure of a grand jury in any case."). A claim that state grand jury proceedings were deficient is not cognizable in a habeas petition. Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) (citing United States v. Mechanik, 475 U.S. 66, 70, 106 S. Ct. 938, 89 L. Ed. 2d 50 (1986)).

B.  __Analysis__

Petitioner's claim regards actions taken during a grand jury. "The trial jury's guilty verdict necessarily renders any irregularities before the grand jury harmless as it establishes not only that there existed probable cause to indict the defendant, but also that the defendant was 'in fact guilty as charged beyond a reasonable doubt.'" __Burden v. Filion__, 421 F. Supp. 2d 581, 588-89 (W.D.N.Y. 2006) (quoting __Mechanik__, 475 U.S. at 68; citing __Lopez__, 865 F.2d at 32). Petitioner had a right to testify during his trial; through this testimony, Petitioner would have had the opportunity to influence the jury's verdict.

> Nonetheless, an ineffective assistance claim may be raised where counsel fails to take advantage of a right granted by state law, though the right does not derive from the federal constitution. New York grants defendants a right to testify before a grand jury in some circumstances. There is no cognizable habeas claim, however, where counsel simply fails to ensure that the defendant testifies before the state's grand jury.

__Robinson v. Phillips__, 04-CV-3446, 2009 WL 3459479, at *3 (E.D.N.Y. Oct. 23, 2009) (citing N.Y. CRIM. PRO. § 190.50(5); __Lanfranco v. Murray__, 313 F.3d 112, 118 (2d Cir. 2002); __Davis v. Mantello__, 42 F. App'x. 488, 491 n.1 (2d Cir. 2002); __May v. Donelli__, 615 F. Supp. 2d 88, 97 (W.D.N.Y. 2009)) (internal quotation marks and citations omitted) (brackets omitted).

As counsel's failure to move to dismiss on this basis would not have overcome Mechanik, Petitioner fails to show any prejudice caused by counsel's actions.  See Strickland, 466 U.S. at 687.  The Appellate Division's holding was not an unreasonable application of Federal law.  Accordingly, Ground Three of the Petition is DENIED.

V.   Grounds Four and Eight: Sufficiency of Evidence

Petitioner argues that: (1) witness testimony (including the testimony of Frank Barratta, Kelly, and Detective Lesser) was not legally sufficient to support a conviction (see Pet. ¶ 12; see also Pet. at 10, 27-28); and (2) "[t]he only evidence used during trial concerning the murder conviction are some pennies, [ ] peanuts, and a Marlboro cigarette pack that was found at the [murder] scene."  (Pet. at 27-28.)

Petitioner's "Ground Eight" argues that "[t]he jury's verdict was against the weight [ ] of the evidence, violating Petitioner's due process[.]"  (Pet. at 30-31.)  Here, Petitioner again argues that Kelly's testimony was irrelevant to the murder charge and fails to prove Petitioner murdered Brown.  (Pet. at 31.)  The Court reviews Grounds Four and Eight jointly.

The Appellate Division held these claims were unpreserved for appellate review and, substantively, that the evidence was legally sufficient to support conviction.  Beecham I, 904 N.Y.S.2d at 728-29 (citing N.Y. CRIM. PRO. L. § 470.05(2)).

A.  Standard

The Second Circuit "has held that 'federal habeas
review is foreclosed when a state court has expressly relied on
a procedural default as an independent and adequate state
ground, even where the state court has also ruled in the
alternative on the merits of the federal claim.'"  Glenn v.
Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (quoting Velasquez v.
Leonardo, 898 F.2d 7, 9 (2d Cir. 1990)).

"A [petitioner] raising a sufficiency challenge [ ]
bears a heavy burden because a reviewing court must consider the
evidence 'in the light most favorable to the [Respondent]' and
uphold the conviction if 'any rational trier of fact could have
found the essential elements of the crime beyond a reasonable
doubt.'"  United States v. Aguilar, 585 F.3d 652, 656 (2d Cir.
2009) (emphasis in original) (quoting Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)).

B.  Analysis

The Appellate Division held that Petitioner's claim
was unpreserved for appellate review; habeas review, therefore,
is foreclosed.  Glenn v. Bartlett, 98 F.3d at 724.  Petitioner's
claim is denied on substantive grounds as well.  After reviewing
the record, the Court finds the evidence was sufficient to
convict Petitioner on each count.  Kelly testified as to the
physical abuse she suffered from Petitioner.  Dr. Gray

corroborated the physical evidence of these beatings. Kelly and Barratta both testified regarding Petitioner's threatening use of a knife against Kelly. As to Brown, DNA evidence did connect Petitioner to the peanut bag in Brown's car. Generally, as Respondent argues, "'[Petitioner's] lies, misstatements and omissions . . . powerfully bespeak his consciousness of guilt.'" (Resp't's Br. at 17 (quoting People v Bierenbaum, 301 A.D.2d 119, 138, 748 N.Y.S.2d 563 (1st Dep't 2002)). Finally, as Respondent also argues, "Petitioner [ ] fled the jurisdiction at the very time of [Brown's] death." (Resp't's Br. at 17.) Petitioner fails to meet "the heavy burden" to overcome the jury's findings. Aguilar, 585 F.3d at 656. The Appellate Division's holding was not an unreasonable application of Federal law. Accordingly, Grounds Four and Eight of the Petitioner are DENIED.

VI. Ground Five: Right to Question Jurors

Petitioner argues that the trial court's imposition of a time limit on voir dire deprived Petitioner of his constitutional right to a fair trial and an impartial jury. (Pet. at 28-29.) The Appellate Division held this claim was unpreserved for appellate review and substantively denied the claim by holding that the trial court properly exercised its discretion. Beecham I, 904 N.Y.S.2d at 728.

A.   Standard

     "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state." U.S. Const. amend. VI.  "In conducting voir dire, a [trial] judge possesses 'ample discretion.'  We will not interfere with the manner in which the [trial] court has chosen to conduct voir dire unless an abuse of discretion is 'clear.'" United States v. Treacy, 639 F.3d 32, 46 (2d Cir. 2011) (quoting United States v. Quinones, 511 F.3d 289, 299 (2d Cir. 2007)) (internal citations omitted).

B.   Analysis

     The Appellate Division held that Petitioner's claim was unpreserved for appellate review; habeas review, therefore, is foreclosed.  Glenn, 98 F.3d at 724.  Substantively, the trial court is afforded wide discretion on voir dire; Petitioner fails to establish how the trial court abused that discretion.  As even Petitioner states, each party was permitted the same amount of time to interview potential jurors.  (See Pet. at 28-29.) Petitioner's counsel did not object to the court's voir dire rules, nor did Petitioner argue that counsel should have objected.[4]   The Appellate Division's holding was not an

---

[4] The Petition includes an ineffective assistance of counsel claim, in which Petitioner did not argue his counsel should have objected to the voir dire rules.

unreasonable application of Federal law.  Accordingly, Ground
Five of the Petition is DENIED.

VII. <u>Ground Six: Prosecutor's Trial Remarks</u>

Petitioner argues certain remarks made by the
prosecutor during closing statements at Petitioner's trial
"exceeded the limit[s] of legitimate advocacy." (Pet. at 29.)
Specifically, Petitioner's claim regards this statement: "There
was nobody else involved with [ ] Brown that was hurting her
like that other than [Petitioner].  You never heard one
scintilla of anybody else that there was anybody else involved
in her life.  None." (Pet. at 29-30.)  The Appellate Division
held this claim was not preserved for appellate review and was,
substantively, without merit.  <u>Beecham I</u>, 904 N.Y.S.2d at 729.

A.   <u>Standard</u>

> A criminal conviction is not to be lightly
> overturned on the basis of a prosecutor's
> comments standing along in an otherwise fair
> proceeding.  Remarks of the prosecutor in
> summation do not amount to a denial of due
> process unless they constitute egregious
> misconduct.  For a claim of prosecutorial
> misconduct to establish a claim of
> constitutional error, it is not enough that
> the prosecutors' remarks were undesirable or
> even universally condemned. . . . The Court
> must then review such comments by a
> prosecutor narrowly to determine whether
> they "so infected the trial with unfairness
> as to make the resulting conviction a denial
> of due process."

Allan v. Conway, 08-CV-4894, 2012 WL 70839, at *20 (E.D.N.Y. Jan. 10, 2012) (quoting Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991); United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999); Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986)) (internal citations and quotation marks omitted).

    B.   <u>Analysis</u>

      The Appellate Division held that Petitioner's claim was unpreserved for appellate review; habeas review, therefore, is foreclosed. <u>Glenn</u>, 98 F.3d at 724. Substantively, Petitioner fails to establish how the prosecutor's remarks denied Petitioner's due process rights. Moreover, assuming, <u>arguendo</u>, "the prosecutor's comments . . . confused the jury . . . the trial court's instruction, combined with the subsequent [jury] charge . . . cured any possible prejudice to [Petitioner]." <u>United States v. Rivera</u>, 971 F.2d 876, 884 (2d Cir. 1992) (citing <u>United States v. Parker</u>, 903 F.2d 91, 99 (2d Cir. 1990)). The Appellate Division's holding was not an unreasonable application of Federal law. Accordingly, Ground Six of the Petition is DENIED.

VIII. <u>Ground Seven: Petitioner's Right to be Present</u>

      Petitioner argues that he was not present at a side-bar conference between the trial court, his counsel, and the

prosecutor. (See Pet. at 30.) The Appellate Division held this claim was without merit. Beecham I, 904 N.Y.S.2d at 729.

A.  Standard

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be informed of the nature and cause of the accusation, who must be confronted with the witnesses against him, and who must be accorded compulsory process for obtaining witnesses in his favor. Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

Faretta v. California, 422 U.S. 806, 819-20, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (internal quotation marks omitted). "[A]n accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings[.]" Id. at 820 n.15 (citing Snyder v. Massachusetts, 291 U.S. 97, 54 S. Ct. 330, 78 L. Ed. 674 (1934)).

This right, however, is not absolute. See, e.g., Illinois v. Allen, 397 U.S. 337, 342, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970). "[T]he privilege of presence does not necessarily extend 'when presence would be useless, or when the

benefit is but a shadow.'  Thus, a defendant's absence from a portion of his trial is reversible error only when it has a 'relation, reasonably substantial, to his opportunity to defend' himself."  Chestnut v. New York, 06-CV-2172, 2009 WL 4282077, at *4 (E.D.N.Y. Nov. 24, 2009) (citations omitted); see also DePallo v. Burge, 296 F. Supp. 2d 282, 289 (E.D.N.Y. 2003) (a defendant's presence is not required in "circumstances involving matters of law or procedure that have no potential for meaningful input from a defendant.")

   B.  Analysis

      Petitioner's claim is meritless.  As Respondent argues, "[P]etitioner has cited a passing reference by the court to an off-the-record discussion concerning trial counsel having enough time to respond to certain prosecution applications." (Resp't's Br. at 23).  This discussion regarded "matters of law or procedure that have no potential for meaningful input from [Petitioner]."  DePallo, 296 F. Supp. 2d at 289.  Petitioner's right to be present was not violated.  His presence would not have afforded him any meaningful opportunity to affect the outcome of the proceeding; moreover, his absence had no relation to Petitioner's ability to defend himself.  The Appellate Division's holding was not an unreasonable application of Federal law.  Accordingly, Ground Seven of the Petition is DENIED.

IX.  Ground Nine: Petitioner's Sentence

Petitioner argues that his sentence was excessive. The Appellate Division held that Petitioner's sentence was not excessive and, therefore, denied the claim.  Beecham I, 904 N.Y.S.2d at 729.

A.  Standard

"No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing Underwood v. Kelly, 692 F. Supp. 146 (E.D.N.Y. 1988)); see also McCalvin v. Senkowski, 160 F. Supp. 2d 586, 589 (S.D.N.Y. 2001) ("Sentencing decisions are not cognizable on habeas corpus review unless the sentence imposed falls outside the range prescribed by state law.").  "Accordingly, the imposition of consecutive sentences is found to run afoul of the Eighth Amendment 'only under extraordinary circumstances.'" Herrera v. Artuz, 171 F. Supp. 2d 146, 151 (S.D.N.Y. 2001) (quoting Salcedo v. Artuz, 107 F. Supp. 2d 405, 414 (S.D.N.Y. 2000)).

B.  Analysis

Petitioner's prison sentence is within the New York guidelines.  Therefore, no federal constitutional issue is presented.  See White, 969 F.2d at 1383.  Petitioner fails to establish how his sentence meets the Herrera "extraordinary

circumstances" exception. Accordingly, Ground Nine of the Petition is DENIED.

CONCLUSION

For the reasons set forth above, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. Because there can be no debate among reasonable jurists that Petitioner was entitled to habeas relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Petitioner and to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    November  5 , 2014
          Central Islip, NY